Kane Moon (SBN 249834)
    kane.moon@moonyanglaw.com
H. Scott Leviant (SBN 200834)
    scott.leviant@moonyanglaw.com
Allen Feghali (SBN 301080)
    allen.feghali@moonyanglaw.com
**MOON & YANG, APC**
1055 W. Seventh St., Suite 1880
Los Angeles, California 90017
Telephone: (213) 232-3128
Facsimile: (213) 232-3125

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RITA GARCIA, individually, and on behalf of all others similarly situated,<br><br>    *Plaintiff*,<br><br>vs.<br><br>PRAXAIR, INC., a Delaware corporation; PRAXAIR DISTRIBUTION, INC., a Delaware corporation; and DOES 1 through 10, inclusive,<br><br>    *Defendants* | Case No.: 2:18-cv-08170-JAK (AFMx)<br><br>CLASS ACTION<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:      January 11, 2021<br>Time:     8:30 a.m.<br>Courtroom: 10B<br>Judge:    Hon. John A. Kronstadt<br><br>Action Filed:  May 18, 2018<br>Trial date:    Not set |

TO THE COURT, TO ALL PARTIES, AND THEIR COUNSEL OF RECORD

Please take notice that on January 11, 2021, at 8:30 a.m., or as soon thereafter as counsel may be heard, in the United States First Street Courthouse, 350 W. First Street, Courtroom 10B, Los Angeles, CA 90012, Plaintiff RITA GARCIA ("Plaintiff") will and hereby does move the Court for an order granting final approval of the JOINT STIPULATION OF CLASS ACTION AND PAGA ACTION SETTLEMENT AND RELEASE ("Agreement" or "Stipulation" herein) reached with Defendants Praxair, Inc. and Praxair Distribution, Inc. ("PDI") (together, "Defendants" or "Praxair"), a true and correct copy of which is attached as Exhibit 1 to the Declaration of H. Scott Leviant submitted herewith. Specifically, Plaintiff moves for an order to:

1.  grant approval of the terms of the Agreement as fair, reasonable and adequate under Rule 23(e) of the Federal Rules of Civil Procedure, including the amount of the settlement; the amount of distributions to class members; and the amounts allocated to the enhancement payments and attorney's fees and costs;

2.  certify for settlement purposes the Settlement Class described in the Agreement as follows: All persons who worked for Defendant PDI in California as an hourly paid, non-exempt employee at any time, excluding truck drivers, during the Class Period (from May 18, 2014, through Preliminary Approval).

3.  appoint Plaintiff as representative for the Settlement Class;

4.  Appointing counsel for Plaintiff, Moon & Yang, APC, as Class Counsel;

5.  approve the use of ILYM Group, Inc. as the settlement administrator;

6.  authorize distributions from the common fund; and,

7.  enter judgment on the terms specified in the Agreement and approved by the Court.

Plaintiff's motion is based on this Notice, the following Memorandum of Points and Authorities, the Declarations of H. Scott Leviant, ILYM Group, Inc., and Plaintiff submitted herewith (the Declaration of Plaintiff was filed as Docket No. 63 and is also

attached as Exhibit 3 to the Leviant Declaration), all other pleadings and papers on file in this action, and any oral argument or other matter that may be considered by the Court.

This Motion is file in conjunction with Plaintiff's related motion for an award of attorney's fees and litigation costs.

Respectfully submitted,

Dated:   December 9, 2020             **MOON & YANG, APC**

By: _____
     Kane Moon
     H. Scott Leviant

Attorneys for Plaintiff RITA GARCIA

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................ iii

I.    INTRODUCTION ................................................................................................ 1

II.   THE NOTICE PROCESS WAS SUCCESSFULLY COMPLETED AFTER
      PRELIMINARY APPROVAL.............................................................................. 1

III.  BACKGROUND .................................................................................................. 2

      A.   The Filing of the Action ............................................................................ 2

      B.   Discovery, Settlement Negotiations, and Settlement................................. 3

IV.   SUMMARY OF SETTLEMENT TERMS............................................................ 4

V.    CLASS DEFINITION ......................................................................................... 6

VI.   THE SETTLEMENT MERITS FINAL APPROVAL ......................................... 7

      A.   Plaintiff's Claims Merit Class Action Treatment...................................... 8

           1.   Numerosity ...................................................................................... 8

           2.   Commonality and Predominance of Common Issues ...................... 9

           3.   Typicality........................................................................................ 10

           4.   Adequate Representation................................................................ 11

           5.   Superiority...................................................................................... 11

      B.   The Settlement Falls Squarely Within the Range of Reasonableness
           and Should Be Finally Approved............................................................. 13

           1.   The Value of the Settlement to Class Members Is Fair, Reasonable
                and Adequate ................................................................................. 14

           2.   The PAGA Allocation .................................................................... 18

           3.   The Agreed Upon Fees and Costs Are Reasonable.......................... 19

                a)   Plaintiff seeks reasonable fees. ................................................. 19

                b)   Plaintiff seeks only actual costs. .............................................. 20

           4.   The Enhancement Award Is Reasonable.......................................... 20

       5.    The Costs of Administration Are Reasonable ................................. 21

VII. CONCLUSION ....................................................................................... 21

TABLE OF AUTHORITIES

**FEDERAL DECISIONAL AUTHORITY**

*Acosta v. Trans Union LLC*, 243 F.R.D. 377 (C.D. Cal. 2007) .........................................7

*Armstrong v. Board of School Directors of the City of Milwaukee*,

    616 F.2d 305 (6th Cir. 1980) ..................................................................7, 8

*Baldwin & Flynn v. Nat'l. Safety Associates*, 149 F.R.D. 598 (N.D. Cal. 1993) ..............8

*Blackie v. Barrack*, 524 F.2d 891 (9th Cir. 1975)................................................... 8, 9, 10

*Cal. Rural Legal Assistance, Inc. v. Legal Servs. Corp.*,

    917 F.2d 1171 (9th cir. 1990) ..............................................................11

*Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*,

    244 F.3d 1152 (9th Cir. 2001) ....................................................... 10, 12

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) ..........................................8

*Elkins v. Equitable Life Ins. Of Iowa*, 1998 WL 133747 (M.D. Fla. 1998)....................12

*Hammon v. Barry*, 752 F.Supp 1087 (DDC 1990).........................................14

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ............................... 8, 9, 10, 11

*Hanon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992).........................................11

*In re Armored Car Anti-Trust Litigation*, 472 F.Supp 1357 (ND GA 1979) .................14

*In re Computer Memories Sec. Litig.*, 111 F.R.D. 675 (N.D. Cal. 1986) ..........................9

*In re Immune Response Securities Litigation*,

    497 F.Supp.2d 1166 (S.D. Cal. 2007) .................................................. 14, 15

*In re Southern Ohio Correctional Facility*, 175 F.R.D. 270 (S.D. Ohio 1997)...............20

*Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685 (N.D. Ga. 2001) ....................................20

*Lewis v. Gross*, 663 F.Supp. 1164 (E.D.N.Y. 1986) ........................................9

*Linney v. Cellular Alaska Partnership*, 1997 WL 450064 (N.D. Cal. 1997) .......... 14, 15

*Mars Steel Corp. v. Continental Illinois National Bank and Trust Co.*,

    834 F.2d 677 (7th Cir. 1987)..........................................................14

*Officers for Justice v. Civil Service Commission of City and County of San Francisco*,

688 F.2d 615 (9th Cir. 1982) ....................................................................13

*Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268 (9th Cir. 1989) ........................19

*Pridd v. Edelman*, 883 F.2d 438 (6th Circuit 1989) ...........................................14

*Riordan v. Smith Barney*, 113 F.R.D. 60 (N.D. Ill. 1986)...................................9

*Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990) .........19

*Sommers v. Abraham Lincoln Federal Savings & Loan Association*,

    79 F.R.D. 571 (ED PA 1978) ........................................................14

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) ............................... 8, 13, 14

*Strube v. American Equity Inv. Life Ins. Co.*, 226 F.R.D. 688 (M.D. Fla. 2005) ............12

*Valentino v. Carter-Wallace*, 97 F.3d 1227 (9th Cir. 1996)...................................12

*Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943 (9th Cir. 1976)...............................7

*Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294 (N.D. Cal. 1995)....................20

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) ...........................19

*Wang v. Chinese Daily News*, 231 F.R.D. 602 (C.D. Cal. 2005)................................ 9, 10

*Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1188 (9th Cir. 2001).....................10

**CALIFORNIA DECISIONAL AUTHORITY**

*Duran v. US Bank Nat'l Ass'n*, 59 Cal. 4th 1 (2014).......................................15

**RULES**

Fed. R. Civ. P. 23 ............................................................ passim

**OTHER AUTHORITIES**

*Findings of the Study of California Class Action Litigation*, 2000-2006 ......................17

**TREATISES**

*Manual for Complex Litigation Second* § 30.44 (1985)....................................7

## I.    **INTRODUCTION**

This is a putative wage and hour class action on behalf of any and all individuals employed by Defendant PDI in California during the Class Period (May 18, 2014 through the date of preliminary approval of this Settlement by the Court), excluding truck drivers. Plaintiff filed a lawsuit on behalf of all non-exempt employees of Defendant PDI in California.  The core issues in the case were based on allegations by Plaintiff that strict rules imposed upon employees resulted in legally deficient meal and rest periods and time under employer control that was not fully compensated.  Defendants dispute these claims, denies liability, and has vigorously defended the action to date.

After discovery, the exchange of additional informal data, and mediation, Plaintiff and Defendants (Plaintiff and Defendants collectively referred to herein as the "Parties") reached a proposed class action settlement with a gross value of about $929 per Class Members for 536 participating Settlement Class Members (the Class Settlement Amount is $500,000). On July 17, 2020, this Court Preliminarily approved the Settlement, and the Notice process was then completed successfully.

The Parties believe the Settlement to be fair and reasonable, to adequately reflect the potential liability, and to be the result of thorough factual and legal analyses and arms-length negotiations.  Through this Motion, Plaintiff requests certification of a Settlement Class pursuant to Fed. R. Civ. P. 23 and final approval of the proposed class action settlement.

## II.    **THE NOTICE PROCESS WAS SUCCESSFULLY COMPLETED AFTER PRELIMINARY APPROVAL**

The Parties have fulfilled the class notice procedures set forth in the Court's Preliminary Approval Order and the Class Members' responses have been overwhelmingly positive.  The claims administrator, ILYM Group, Inc. ("Settlement Administrator" or "ILYM"), sent individual notices to 538 Class Members on August 14, 2020.  (Declaration of Makenna Snow ("Snow Decl."), ¶ 7.)  The list of Class Members utilized by ILYM was prepared by (1) obtaining a list of Class Members from Defendant,

and (2) updating all addresses through the National Change of Address System.  (Snow Decl., ¶¶ 5-6.)  ILYM mailed the Notice to 538 class members, based on the data described above.  (Snow Decl., ¶¶ 5-7.) Address traces were performed and updated addresses were obtained for 18 of the 26 returned packets.  (Snow Decl., ¶¶ 8-9.)  Seven Notices were undeliverable because current addresses could not be located even after using consumer databases to search for current addresses.  (Snow Decl., ¶ 10.)  The best Notice practicable was provided.

*No* Class Members have objected to the settlement.  (Snow Decl., ¶ 12.)  Only two Class Members submitted valid requests for exclusion.  (Snow Decl., ¶ 11.)  ILYM's costs for administration will be $13,000.00.  (Snow Decl., ¶ 15.)  Note that, in the Snow Declaration, the estimated payments to Settlement Class Members in Paragraph 14 are out of the Net Settlement Amount, not the Gross Settlement Amount, such that the reference to "the average gross payment" refers to the pre-tax average out of the Net Settlement Amount, the amount after all other deductions, not the Gross Settlement Amount.

## III.    BACKGROUND

### A.    The Filing of the Action

On May 18, 2018, Plaintiff filed a lawsuit in California state court on behalf of all non-exempt, hourly paid employees of Defendant in California.  (Declaration of H. Scott Leviant ["Leviant Decl."], at ¶ 4.)  The Complaint asserted claims for: (i) unpaid minimum and straight time wages; (ii) unpaid overtime; (iii) meal and rest break violations; (iv) failure to timely pay wages upon termination; (v) wage statement violations; and, (vi) derivative claims under Business & Professions Code §§ 17200, *et seq*.  On September 9, 2019, by Stipulation, Plaintiff filed a First Amended Complaint adding a claim for Civil Penalties Under PAGA (Cal. Lab. Code § 2699, et seq.).

Defendants removed the matter to federal court (Northern District) on June 28, 2018. (Leviant Decl., at ¶ 5.)  The matter was Ordered transferred to the Central District on September 18, 2018.  (*Id*.)

**B.    Discovery, Settlement Negotiations, and Settlement**

The Parties have conducted significant investigation of the facts and law during the prosecution of this Litigation. (Leviant Decl., at ¶ 6.)  Such investigation has included formal written discovery; informal data provided as part of the pre-mediation exchange of information; and, numerous communications between the Parties to identify and assess the issues. (*Id.*)  The Parties have further investigated the applicable law as applied to the facts discovered regarding the alleged claims of Plaintiff and potential defenses thereto, and the damages claimed by Plaintiff. (*Id.*) The filing of a Motion for Class Certification and the Opposition thereto further assisted the Parties with the evaluation of the claims and risks each Party faced.

The Parties mediated this matter before professional mediator Jeffrey Krivis on May 15, 2019 in Encino, California. (Leviant Decl., at ¶ 7.)  The matter did not settle at the mediation, but the Parties continued to negotiate with the assistance of Mr. Krivis.  (*Id.*) The Parties subsequently agreed to the basic terms of settlement.  (*Id.*)

The Parties then prepared and signed a long form settlement agreement (the Agreement). (Leviant Decl., at ¶ 8.)  The Settlement was reached after evaluating the Parties' theories of potential exposure for the underlying claims, as well as Plaintiff's claims for interest and penalties.  The Parties also assessed appropriate discounts to the potential liability based on Defendants' contentions and defenses.  (*Id.*)  Plaintiff and Class Counsel are aware of the burdens of proof necessary to establish liability for the claims in the Action, both generally and in response to Defendant's defenses thereto.  (*Id.*)

Based on their own independent investigations and evaluations, Class Counsel are of the opinion that the Settlement for the consideration and terms set forth below, in view of the Class Representatives' and average Class Member's claims and the risk of loss, is fair, reasonable, and adequate in light of all known facts and circumstances, and is in the best interests of the Class.  (Leviant Decl., at ¶ 9.)  Class Counsel are also of the opinion that the total consideration and payment set forth in this Agreement is adequate in light of the uncertainties surrounding the risk of further litigation and the defenses that Defendants

1   has asserted and could assert.  (*Id.*)

2          Solely for the purpose of settling this case, the parties agree that the requirements

3   for establishing class action certification with respect to this class have been met and are

4   met.  (Leviant Decl., at ¶ 10.)  If this Settlement is not approved by the Court for any

5   reason, Defendants reserve the right to contest class certification.  (*Id.*)  This Settlement, if

6   approved by the Court, will result in the termination with prejudice of the litigation

7   through the entry of the Judgment and the release of all released claims for all Class

8   Members, including all within the class definition who have not elected to exclude

9   themselves from the Settlement Class.  (*Id.*)

10  **IV.    SUMMARY OF SETTLEMENT TERMS**

11         The full terms of the settlement are set forth in the Agreement.  The primary

12  material terms are as follows:

13              (a)    The Settlement Class is:  All persons who worked for Defendant PDI

14                     in California as an hourly paid, non-exempt employee at any time,

15                     excluding truck drivers, during the Class Period (from May 18, 2014,

16                     through Preliminary Approval) (Settlement, ¶ 8.)

17              (b)    Defendants stipulate to certification of a Settlement Class for purposes

18                     of Settlement only;

19              (c)    Settlement Amount:  Defendants will pay a maximum of $500,000.00,

20                     referred to as the Class Settlement Amount (or CSA herein)

21                     (Settlement, ¶ 10);

22              (d)    No Reversion: The Settlement is a non-reversionary settlement

23                     (Settlement, ¶ 2);

24              (e)    No Claim Form Required: No claim for is required for a Class

25                     Member to receive the Class Member's settlement share.  (Settlement,

26                     ¶ 17);

27              (f)    Release:  The Settlement will release specified wage-and-hour claims

28                     for those Settlement Class Members who do not opt out of the

1  Settlement, based upon or arising from the claims asserted against

2  Defendants in the Action;

3  (g)  <u>Net Settlement Amount Available to the Class</u>: After deducting Class

4  Counsels' proposed attorneys' fees and costs, enhancement payment to

5  Plaintiff, Administration costs, and the payment to the LWDA, the

6  remainder will be available for distribution to Settlement Class

7  Members who do not opt out, with each Settlement Class Member

8  receiving a share based on the number of workweeks each Settlement

9  Class Member worked for Defendants within the Settlement Class

10  Period.  The Net Settlement Amount is estimated to be $304,500, and

11  each of the approximately 480 Class Members will receive, on

12  average, up to $634, after all deductions but before any tax

13  withholdings (Settlement, ¶¶ 5, 9, 10, 18);

14  (h)  <u>Tax Allocation</u>: The amounts distributed to Settlement Class Members

15  will be characterized as one-third unpaid wages and meal and rest

16  premiums, and two-thirds as alleged unpaid penalties and interest

17  (Settlement, ¶ 68);

18  (i)  <u>Employer's Portion of Payroll Taxes Paid Separately</u>: Defendant's

19  portion of payroll taxes (e.g., FICA, FUTA, etc.) owed on any

20  settlement payments to Settlement Class Members that constitute

21  wages will be paid separate and apart from the GSM (Settlement, ¶

22  10);

23  (j)  <u>*Cy Pres*</u>:  Any settlement checks that are mailed to the Settlement

24  Class Members and remain uncashed after 180 days of the date of

25  issuance will be cancelled, and the moneys will be directed to the cy

26  pres, State Bar's Justice Gap Fund, or other recipient as directed by the

27  Court (Settlement, ¶ 66);

28

1        (k)    <u>Administration</u>:  The notice portion of the Settlement will be

2            administered by a third-party Administrator, ILYM Group, Inc., and

3            costs of administration are estimated to be no more than $13,000

4            (Settlement, ¶ 5);

5        (l)    <u>PAGA Allocation</u>: From the CSA, $37,500 will be paid to the

6            California Labor & Workforce Development Agency to resolve and

7            settle claims brought pursuant to the California Private Attorneys

8            General Act, Labor Code § 2699 et seq. ("PAGA"), representing 75%

9            of the $50,000 allocated to resolve claims arising under PAGA.

10           (Settlement, ¶ 18);

11       (m)   <u>Enhancement/Service Award to Plaintiff</u>: Defendants will not oppose

12           the application for Class Representative Enhancement of up to

13           $5,000.00 for Plaintiff, to be paid from the CSA. (Settlement, ¶ 46);

14       (n)   <u>Fees and Costs</u>:  Defendant will not oppose Class Counsel's

15           application for fees up to the amount of $125,000.00 (25% of the

16           GSA), and actual costs, in an amount not to exceed $15,000, to be

17           paid out of the GSA.  (Settlement, ¶ 45.)

18   (Leviant Decl., ¶ 11-12.)  A true and correct copy of the JOINT STIPULATION OF

19   CLASS ACTION AND PAGA ACTION SETTLEMENT AND RELEASE is attached

20   thereto as Exhibit "A."

21   **V.**    **CLASS DEFINITION**

22       The Settlement Class is defined as follows:

23       All persons who worked for Defendant PDI in California as an hourly

24       paid, non-exempt employee at any time, excluding truck drivers, during

25       the Class Period (from May 18, 2014, through Preliminary Approval)

26       (Settlement, ¶ 8.)

27   (Leviant Decl., ¶ 34 and Exhibit 1.)

28

## VI.  **THE SETTLEMENT MERITS FINAL APPROVAL**

The law favors settlement, particularly in class actions and other complex cases, where substantial resources can be conserved by avoiding the time, cost, and the rigors of formal litigation. *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976). These concerns apply in a case such as this, where allegedly wrongful practices potentially affected numerous employees, in relatively small amounts.

Any settlement of class litigation must be reviewed and approved by the court. This is done in two steps: (1) an early (preliminary) review by the court, and (2) a final review after notice has been distributed to the class for their comment or objections. The *Manual for Complex Litigation Second* states at § 30.44 (1985):

> A two-step process is followed when considering class settlements … if the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval, then the court should direct that notice be given to the class members of a formal fairness hearing, at which evidence may be presented in support of and in opposition to the settlement.

When parties reach a settlement agreement prior to class certification, "courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Acosta v. Trans Union LLC*, 243 F.R.D. 377, 383 (C.D. Cal. 2007).

"The first step is a preliminary, pre-notification hearing to determine whether the proposed settlement is 'within the range of possible approval.' This hearing is not a fairness hearing; its purpose, rather is to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Armstrong v. Board of School Directors of the City of Milwaukee*, 616 F.2d 305, 314 (6th Cir. 1980) [quoting Manual for Complex Litigation s 1.46, at 53-55 (West 1977)]. "[T]he district court must assess whether a class exists," *Staton v. Boeing Co.*, 327 F.3d 938, 952

(9th Cir. 2003), *i.e.*, whether the lawsuit qualifies as a class action under Rule 23. *See, e.g., Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998) (reviewing settlement to ensure compliance with requirements of Rule 23(a) and Rule 23(b)(3)).

At the second stage of the approval process, after class members have had an opportunity to object to the settlement, the court makes a final determination whether the settlement is "fair, reasonable and adequate" under Rule 23(e). *Armstrong*, 616 F.2d at 314; *see Staton*, 327 F.3d at 952; *see also* Rule 23(e)(C)(1), which provides that a court may finally approve a settlement of a class action if it finds after a hearing that the settlement is "fair, reasonable, and adequate" and Rule 23(e)(C)(4), which provides that any class member may object to a proposed settlement.

### A.    Plaintiff's Claims Merit Class Action Treatment

In determining the propriety of class certification, a court may not delve into the underlying merits of the claims. The fundamental question "is not whether . . . plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974).

The Ninth Circuit has established that, when ruling on the propriety of class certification, a district court "is bound to take the substantive allegations of the complaint as true." *Blackie v. Barrack*, 524 F.2d 891, 901 n.17 (9th Cir. 1975). A court "may not require plaintiffs to make a preliminary proof of their claim; it requires only sufficient information to form a reasonable judgment." *Baldwin & Flynn v. Nat'l. Safety Associates*, 149 F.R.D. 598, 600 (N.D. Cal. 1993). Under these standards, this action meets the requirements for certification under Rule 23(a) and Rule 23(b)(3).

### 1.    Numerosity

Under Rule 23(a)(1), a class action may be maintained where "the class is so numerous that joinder of all members is impracticable." In determining whether joinder would be impracticable, a court may consider not only the sheer number of class members, *Riordan v. Smith Barney*, 113 F.R.D. 60, 62 (N.D. Ill. 1986) (numbers alone may be

dispositive), but also "the nature of the action, the size of the individual claims, [and] the inconvenience of trying individual suits." *Wang v. Chinese Daily News*, 231 F.R.D. 602, 606 (C.D. Cal. 2005). "A class action may proceed upon estimates as to the size of the proposed class." *Lewis v. Gross*, 663 F. Supp. 1164, 1169 (E.D.N.Y. 1986). *See also, In re Computer Memories Sec. Litig.*, 111 F.R.D. 675, 679 (N.D. Cal. 1986) (class certified where plaintiffs did not establish exact size, but demonstrated that class would "obviously be sufficiently numerous").

In this action, the Class is composed of 536 individuals. (Snow Decl., ¶¶ 7-11.) It is sufficiently numerous that the individual joinder of all members is impracticable.

### 2.    Commonality and Predominance of Common Issues

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." This commonality requirement is "construed permissively." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). Plaintiff need not demonstrate that all questions of fact and law are common. "The existence of shared legal issues with divergent factual predicates is sufficient." *Id.* Where a class is united by a common interest in determining whether a defendant's broad course of conduct is actionable, commonality is not defeated "by slight differences in class members' positions." *Blackie,* 524 F.2d at 901 n.17.

In this litigation, all Class Members have shared a common interest in determining whether policies and procedures resulted in legally deficient meal periods and rest breaks for Class Members; whether policies and procedures resulted in uncompensated time under the employer's control; whether, as a result of these issues, the Defendant violated the itemized wage statement provisions of Labor Code § 226 by not providing accurate information as to wages; and whether the Defendant's policies and practices violated California Business & Professions Code sections 17200 *et seq*.

Given the permissive standard that courts in the Ninth Circuit employ when determining commonality, certification of the Class for settlement purposes is appropriate as Rule 23(a)(2) is satisfied.

Once it is established that common issues of law or fact exist, for Rule 23(b)(3)

purposes, the Court next examines whether those common issues predominate. The predominance inquiry focuses on whether the class is "sufficiently cohesive to warrant adjudication by representation." *Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001). Central to predominance is "the notion that the adjudication of common issues will help achieve judicial economy." *Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1188, 1189 (9th Cir. 2001). When common questions represent a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022. It is well settled that the need for determining differing amounts of damages suffered by different class members does not preclude class certification. *See*, *Blackie*, 524 F.2d at 905; *Wang*, 231 F.R.D. at 613.

There are common issues that may predominate over individual issues in this litigation. For example: (1) Whether policies and procedures resulted in legally deficient meal periods and rest breaks for Class Members; (2) Whether policies and procedures resulted in uncompensated time under the employer's control; (3) Whether, as a result of these issues, Defendants violated the itemized wage statement provisions of Labor Code § 226 by not providing accurate information as to wages; (4) Whether, as a result of these issues, Defendants violated the payment timing provisions of Labor Code § 203 by not timely paying all wages due to former employees; and (5) Whether the Defendants' policies and practices violated California Business & Professions Code §§ 17200 *et seq*.

### 3. Typicality

Rule 23(a)(3) requires that the representative plaintiff have claims "typical of the claims . . . of the class." This factor is also construed permissively. *See Hanlon*, 150 F.3d at 1019-20. Representative claims are typical "if they are reasonably co-extensive with those of absent class members; they need not be identical." *Id*. at 1020. In other words, named plaintiffs need not be "identically situated" with all other class members. "It is enough if their situations share a common issue of law or fact and are sufficiently parallel

1   to insure a vigorous and full presentation of all claims for relief." *Cal. Rural Legal*

2   *Assistance, Inc. v. Legal Servs. Corp.*, 917 F.2d 1171, 1175 (9th Cir. 1990).

3        Typicality refers to the "nature of the claim . . . of the class representative, and not

4   to the specific facts from which it arose." *Hanon v. Dataproducts Corp.*, 976 F.2d 497,

5   508 (9th Cir. 1992). The typicality requirement is satisfied where "the named Plaintiffs

6   raise the same Labor Code violations as other putative class members." *Id.* Here, Plaintiff

7   is raising the same claims as the putative class members. (Leviant Decl., ¶ 36.)

8                          **4.    Adequate Representation**

9        Rule 23(a)(4) requires that "the representative parties will fairly and adequately

10  protect the interests of the class." Adequate representation turns on whether the named

11  plaintiff and his counsel "have any conflicts of interest with other class members," and

12  whether the named plaintiff and his counsel will "prosecute the action vigorously on behalf

13  of the class." Adequacy may be established by the mere fact that counsel are experienced

14  practitioners. *Hanlon*, 150 F.3d at 1020.

15       There are no conflicts of interest between Plaintiff and Class Members, and Plaintiff

16  has both shown and expressed a willingness to represent Class Members. (Dkt. No. 63:

17  Garcia Decl., ¶ 4-17, attached as Exhibit 3 to the Leviant Decl.) The similarity of the

18  claims asserted and remedies sought by Class Members and Plaintiff do not suggest any

19  divergent interests held by Plaintiff. Defendant did not assert unique defenses against

20  Plaintiff that it could not assert against any other Class Members. Also, there are no

21  conflicts with Plaintiff's counsel.

22       Plaintiff's counsel has substantial class action experience and can adequately

23  represent the Class. They have been appointed class counsel in many wage and hour class

24  actions against major employers. (Leviant Decl., ¶¶ 21-26, 39.) Plaintiff's counsel has

25  included detailed information about experience in the field of class action litigation and

26  wage and hour suits in particular.

27                          **5.    Superiority**

28       In deciding whether to certify a class for settlement purposes, a court considers the

following factors to determine whether a class action is superior: (a) class members'

interests in individually controlling the prosecution or defense of separate actions; (b) the

extent and nature of any litigation concerning the controversy already commenced by or

against members of the class; and (c) the desirability or undesirability of concentrating the

litigation of the claims in the particular forum.[1]  Some courts have found that the third

Rule 23(b)(3) factor is "conceptually irrelevant in the context of a settlement."  See *Strube*

*v. American Equity Inv. Life Ins. Co.*, 226 F.R.D. 688, 697 (M.D. Fla. 2005).  "With the

settlement in hand, the desirability of concentrating the litigation in one forum is obvious."

*Elkins v. Equitable Life Ins. Of Iowa*, 1998 WL 133747, at *19 (M.D. Fla. 1998).

To determine whether the superiority requirements of Rule 23(b)(3) are satisfied, a

court compares a class action with alternative methods for adjudicating the parties' claims.

Lack of a viable alternative to a class action necessarily means that it satisfies the

superiority requirement.  *See Valentino v. Carter-Wallace*, 97 F.3d 1227, 1235-36 (9th Cir.

1996) ("a class action is a superior method for managing litigation if no realistic alternative

exists").  "[I]f a comparable evaluation of other procedures reveals no other realistic

possibilities, [the] superiority portion of Rule 23(b)(3) has been satisfied."

*Culinary/Bartender Trust Fund*, 244 F.3d at 1163.  In *Culinary/ Bartender Trust Fund*, the

Ninth Circuit held that the "case involve[d] multiple claims for relatively small sums" and

that the class action clearly served as the only method that would "'permit the plaintiffs to

pool claims which would be uneconomical to litigate individually.'"  *Id*. at 1163.

The class action is superior here as it is on the only method that will allow Class

Members "to pool [their individual] claims which would be uneconomical to litigate

individually."  *Id.*

The factors articulated in Rule 23(b)(3)(A), (B) and (C) also favor class

---

[1] Rule 23(b)(3)(A)-(C). When a court reviews a class action settlement, it does *not* consider Rule 23(b)(3)(D), the fourth factor, regarding difficulties of managing a class action. *Amchem Products Inc. v. Woodward* (1997) 521 U.S. 591, 620 (in deciding whether to certify a class for settlement purposes, a district court "need not inquire whether the case, if tried, would present intractable management problems").

PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND
CERTIFICATION OF SETTLEMENT CLASS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

1  certification.  It is difficult to believe that any Class Members have an interest in

2  individually controlling the prosecution of separate actions, given the relatively small sums

3  involved for any one Class Member.  Any Class Member who wanted to pursue a separate

4  action could opt out of the Settlement, and only two did.

5       Also, it is desirable to concentrate issues in one forum.  The Settlement allows all

6  individuals to resolve similar claims against Defendant through a process that does not

7  even require a claim form.

8      **B.**    <u>**The Settlement Falls Squarely Within the Range of Reasonableness and**</u>

9            <u>**Should Be Finally Approved**</u>

10       No single criterion determines whether a class action settlement meets the

11  requirements of Rule 23(e).  The Ninth Circuit has directed district courts to consider a

12  variety of factors without providing an "exhaustive list" or suggesting which factors are

13  most important.  *See, Staton*, 327 F.3d at 959.  "The relative degree of importance to be

14  attached to any particular factor will depend upon and be dictated by the nature of the

15  claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances

16  presented by each individual case."  *Officers for Justice v. Civil Service Commission of*

17  *City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).

18       Due to the impossibility of predicting any litigation result with certainty, a district

19  court's evaluation of a settlement essentially amounts to "'an amalgam of delicate

20  balancing, gross approximations and rough justice.'"  *Id*. at 625.  The ultimate touchstone,

21  however, is whether "class counsel adequately pursued the interests of the class as a

22  whole."  *Staton*, 327 F.3d at 961.

23       As the Ninth Circuit explained in *Officers for Justice*, the district court's role in

24  evaluating a class action settlement is therefore tailored to meet that narrow objective.

25  *Officers for Justice*, 688 F.2d at 625.  Review under Rule 23(e) "must be limited to the

26  extent necessary to reach a reasoned judgment that the agreement is not the product of

27  fraud or overreaching by, or collusion between, the negotiating parties."  *Id*.  Accordingly,

28  the Ninth Circuit will not reverse a district court's approval of a class action settlement

"unless the fees and relief provisions clearly suggest the possibility that class interests gave

way to self interest." *Staton*, 327 F.3d at 961.

There is a presumption that the negotiations were conducted in good faith.

Newberg, §11.51; *Pridd v. Edelman*, 883 F.2d 438, 447 (6th Circuit 1989); *Mars Steel*

*Corp. v. Continental Illinois National Bank and Trust Co.*, 834 F.2d 677, 682 (7th Cir.

1987).  Courts do not substitute their judgment for that of the proponents, particularly

where, as here, settlement has been reached with the participation of experienced counsel

familiar with the litigation.  *Hammon v. Barry*, 752 F. Supp. 1087 (D.D.C. 1990); *In re*

*Armored Car Anti-Trust Litigation*, 472 F. Supp. 1357 (N.D. GA 1979); *Sommers v.*

*Abraham Lincoln Federal Savings & Loan Association*, 79 F.R.D. 571 (E.D. PA 1978).

The fact that settlement results from arms-length negotiations following "relevant

discovery" creates "a presumption that the agreement is fair." *Linney v. Cellular Alaska*

*Partnership*, 1997 WL 450064, *5 (N.D. Cal. 1997); *See In re Immune Response*

*Securities Litigation*, 497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007) (settlement approved

where informal discovery gave the parties a clear view of the strength and weaknesses of

their cases).

Here, the Parties reached a non-collusive settlement after months of negotiations.

The settlement was finally reached after an arm's length mediation before Jeffrey Krivis, a

highly-respected mediator skilled at helping parties attempting to negotiate reasonable

settlements in wage and hour class actions.  Obtaining class certification and establishing

liability posed significant hurdles for the class that justified the settlement.  The Agreement

falls well within the range of reasonable outcomes and merits approval under Rule 23(e).

(Leviant Decl., ¶¶ 7, 10, 12-19.)

## 1.    The Value of the Settlement to Class Members Is Fair, Reasonable and Adequate

The Parties reached a Settlement in good faith after negotiating at arm's length with

a professional mediator.  (Leviant Decl., ¶ 7.)  Settlement occurred only after substantial

discovery was conducted and additional, relevant information was shared prior to

mediation.  The information exchanged was sufficient to permit Plaintiff's counsel to adequately evaluate the settlement. And, notably, approval of a class action settlement does not require that discovery be formal or exhaustive (though it was here).  *See*, *e.g.*, *In re Immune Response Securities Litigation*, 497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007) (settlement approved where informal discovery gave the parties a clear view of the strength and weaknesses of their cases).  The fact that settlement results from arms length negotiations following "relevant discovery" creates "a presumption that the agreement is fair."  *Linney v. Cellular Alaska Partnership*, 1997 WL 450064, at *5 (N.D. Cal. 1997).

With respect to the claims asserted on behalf of the Settlement Class in this case, there are significant risks that support the reduced compromise amount. These risks include, but are not limited to: (i) the risk that Plaintiff would be unable to establish liability for allegedly unpaid straight time or overtime wages, *see Duran v. US Bank Nat'l Ass'n*, 59 Cal. 4th 1, 39 & fn. 33 (2014) ("*Duran*"), *citing Dilts v. Penske Logistics, LLC* 2014 WL 205039 (S.D. Cal. 2014) (dismissing certified off-the-clock claims based on proof at trial); (ii) the risk that Defendants' challenged employment policies might not ultimately support class certification or a class-wide liability finding, *see*, *Duran*, 59 Cal. 4th at 14 & fn. 28 (*citing Court of Appeal decisions favorable on class certification issue without expressing opinion as to ultimate viability of proposition); (iii) the risk that uncertainties pertaining to the ultimate legality of Defendants' policies and practices could preclude class-wide awards of statutory penalties under Labor Code §§ 203 and 226(e); (iv) the risk that individual differences between Settlement Class Members could be construed as pertaining to liability, and not solely to damages, *see*, *Duran*, 59 Cal. 4th at 19; (v) the risk that class treatment could be deemed improper as to one or more claims except for settlement purposes; (vi) and the risk that lengthy appellate litigation could ensue.  Defendants strongly deny any liability and the propriety of class certification for any reason other than settlement.  (Leviant Decl., ¶ 16.)  Continued litigation of this lawsuit presented Plaintiff and Defendants with substantial legal risks that were (and continue to be) very difficult to assess.

In light of the uncertainties of protracted litigation, the settlement amount reflects a fair and reasonable recovery for the Settlement Class Members. (Leviant Decl. ¶¶ 13-19.) The settlement amount is, of course, a compromise figure. (Leviant Decl. ¶ 17.) By necessity it took into account risks related to liability, damages, and all the defenses asserted by the Defendant. (*Id.*) Moreover, each Settlement Class Member will be given the opportunity to opt out of the Settlement, allowing those who feel they have claims that are greater than the benefits they can receive under this Settlement, to pursue their own claims. (*Id.*) For the 536 participating members of the Class, the average *gross* recovery before deductions for taxes, fees, and other costs, is approximately $929 per class member. (Leviant Decl., ¶ 17.) The value of this amount reflects a fair compromise well within the range of reasonableness. Given the strong case that Defendants could bring to bear to challenge certification and liability, this is not an inconsequential sum. And, confirming the fundamental fairness of the settlement, each Class Member will be compensated ratably based on the number of workweeks they worked during the class period. (*Id.*)

The Class Settlement Amount is fully consistent with any risk at this stage in the litigation. While Plaintiff would certainly have preferred to recover even more (and Defendant would have preferred to pay far less or zero), this outcome is in line with a carefully constructed estimate of the current fair value of the case. (Leviant Decl., ¶ 18.) On that basis, it would be unwise to pass up this settlement opportunity. Again, the settlement amount falls *within* the statutory damages range, not below it. (*Id.*)

After analyzing the claims in this matter, Plaintiff has concluded that the value of this Settlement is fair, adequate and reasonable. For example, a reasonably estimated exposure for unpaid wages due to off the clock work over the class period was calculated, with the assistance of an expert, to be approximately $748,832. However, with the risk factor discounts for certification and liability, the value of that claim is estimated to be approximately $74,883, assuming certification probability of 25% and merits success at 40%. The reasonably estimated exposure for meal break violations over the class period was calculated at $668,351, with discounts of certification and liability risks (20% and

30% respectively) resulting in a risk-adjusted exposure of $80,202.  Performing risk-adjusted valuations for all claims yields a total value in the range of roughly $480,000 – $550,000, compared to an unreduced estimated exposure of approximately $2,500,000.[2] (Leviant Decl., ¶¶ 18, 18(g).) The goals of this litigation have been met. (Leviant Decl., ¶ 18, and subparagraphs.)

Considering the statutory framework and risks, this result here is fully supportable as reasonable.  (Leviant Decl., ¶ 19.) Certification rates are lower than conventional wisdom holds.  *See*, *e.g.*, H. Scott Leviant, *Second Interim Report on class actions in California sheds new light on certification* (February 19, 2010), www.thecomplexlitigator.com, available at http://www.thecomplexlitigator.com/post-data/2010/2/19/second-interim-report-on-class-actions-in-california-sheds-n.html; *see also*, *Findings of the Study of California Class Action Litigation*, 2000-2006, available at http://www.courtinfo.ca.gov/reference/documents/class-action-lit-study.pdf (finding, as part of a study conducted by the Judicial Council of California, at page 5, and in Table 9, at page 15, that only 21.4% of all class actions were certified either as part of a settlement *or* as part of a contested certification motion).  In estimating risk adjustments here, Plaintiff's counsel has assumed estimated certification probabilities of 20% - 30%, depending on the claim, assumptions that substantially *exceed* the average rate at which cases were certified in California over the study years, based upon data available through the California Courts website.  (*Id*.)  Given that well under 20% of all cases filed in California as proposed class actions are ultimately certified by way of a contested motion,

---

[2] In a sense, it is nonsensical to assign specific percentages to future events, but it does provide a specific method for attempting to reduce the concept of "very high risk" or "high risk" to a quantifiable amount.  Certification of a claim is typically a binary event. One does not obtain a 20% certification; a claim is either certified or it is not.  But the current expected value is best quantified by applying a risk reduction, based on the total experience of counsel.  Setting aside the math, it is fair to say that Plaintiff and the putative class faced very high risks proceeding to a contested certification motion and (in the best-case outcome) a trial thereafter, given that Defendants credibly argued (in varying degrees) that certification should be denied as to some or all facilities, job categories, or claims and that Plaintiff would have difficulty prevailing on the merits on all claims.

and a similar trend is seen in federal courts, it is fair to say that, if anything, the use of high

estimates for certification *overstates* the realistic current claim value.  (*Id*.)  It would also

be appropriate to evaluate the result by examining only the premium wages at issue,

excluding penalties and interest.[3]  Under that metric, the settlement recovered a substantial

portion of those premium wages. Viewed either way, this Settlement achieves the goals of

the litigation.

By obtaining reasonable value for the claims in light of the high risks of litigation,

Plaintiff achieved a fair settlement that merits approval.

## 2.    The PAGA Allocation

Plaintiff's estimate of the theoretical recovery on the PAGA claim is $791,112.

(Leviant Decl. ¶ 18(e)(4).) This estimate does not limit the penalty to the assumption that

the $100 initial violation pay period would apply to all pay periods as there is no evidence

that a court or a commissioner had informed Defendant that its conduct violated the Labor

Code. *Amaral v. Cintas Corp*., 163 Cal. App. 4th 1157, 1209 (2008); *Willis v. Xerox Bus.*

*Servs*., LLC, 2013 WL 6053831, *7-8 (E.D. Cal. 2013): "Under California law, courts

have held that employers are not subject to heightened penalties for subsequent violations

until and unless a court or commissioner notified the employer that it is in violation of the

Labor Code."  Instead, the maximum possible penalty was calculated, based on data and,

where no data exists, the extrapolations and assumptions used to evaluate all claims.

The PAGA allocation is a small percentage of the possible exposure but that is

permissible in this case because the settlement of the underlying wage and hour claims is

adequate to serve the deterrent purpose of the PAGA statute.  *O'Connor v. Uber*

---

[3] The exclusion of interest and penalties from the fairness evaluation is proper
because, first, PAGA penalties are discretionary (*see* Lab. Code § 2699(e)(2) (the court in
its discretion "may award a lesser amount than the maximum civil penalty amount
specified by this part…")), and, second, courts evaluate the strength of a proposed
settlement without taking potential penalties or interest into consideration.  *See Rodriguez
v. West Publishing Corp.*, 563 F.3d 948, 955 (9th Cir. 2000); *see also Miller v. CEVA
Logistics U.S.A., Inc.*, 2015 WL 729638, at *7 (E.D. Cal. Feb. 19, 2015) (court utilized
calculation of a defendant's exposure exclusive of interest and penalties to determine
whether the settlement fell within the range of possible approval).

*Technologies, Inc.*, 201 F.Supp.3d 1110, 1135 (N.D. Cal. 2016): "By providing fair compensation to the class members as employees and substantial monetary relief, a settlement not only vindicates the rights of class members as employees, but may have a deterrent effect upon the defendant employer and other employers, an objective of PAGA." *See also Viceral v. Mistras Group*, 2016 WL 5907869 *9 (N.D. Cal. 2016): "Applying O'Connor's sliding scale approach, settlement of the PAGA claim may be substantially reduced below its standalone settlement value without sacrificing its statutory purposes because the non PAGA settlement is relatively substantial."  In addition, Plaintiff has allocated *more* of the Settlement, as a percentage, to PAGA than is usual in wage and hour settlements of combined class and PAGA claims.

### 3. The Agreed Upon Fees and Costs Are Reasonable

#### a) *Plaintiff seeks reasonable fees.*

While a separate Motion addresses Plaintiff's requests for attorney's fees, costs, and an enhancement award, Plaintiff briefly addresses the reasonableness of the amounts below.

The compensation sought for Plaintiff's counsel is also fair and reasonable.  The Ninth Circuit has directed that, to determine what constitutes a fair and reasonable percentage of the settlement for purposes of calculating common fund attorneys' fees, the courts should begin with a "benchmark" percentage of the total fund.  *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990).  The percentage can be adjusted upwards where the risks overcome, the benefits obtained and the work necessary to achieve those results supports such an adjustment of the benchmark.

Here, the Settlement Amount is $500,000. Plaintiff's counsel has agreed to seek no more than **$125,000.00** in fees, which is appropriate in light of the quality of the result and

1   the benchmark standard, and is well under the current lodestar of $148,994.50.[4]  (Leviant

2   Decl., ¶ 31.)

3                              **b)**  *Plaintiff seeks only actual costs.*

4          Plaintiff's counsel also requests actual costs incurred and paid without

5   reimbursement in the litigation of this Action, not to exceed $15,000.  Those costs are

6   **$10,369.91**, as supported by the Declaration of H. Scott Leviant attaching a summary of

7   incurred costs as Exhibit "4".  (Leviant Decl., ¶¶ 44, 47 and Exhibit 4.)

8                    **4.    The Enhancement Award Is Reasonable**

9          Enhancement awards serve to reward the named plaintiff for the time and effort

10  expended on behalf of the class, and for exposing herself to the significant risks of

11  litigation. "Courts routinely approve incentive awards to compensate named plaintiffs for

12  the services they provided and the risks they incurred during the course of the class action

13  litigation."  *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001); *In re*

14  *Southern Ohio Correctional Facility*, 175 F.R.D. 270, 272 (S.D. Ohio 1997).  In *Coca-*

15  *Cola*, for example, the court approved incentive awards of $300,000 to each named

16  plaintiff in recognition of the services they provided to the class by responding to

17  discovery, participating in the mediation process and taking the risk of stepping forward on

18  behalf of the class.  *Coca-Cola*, 200 F.R.D. at 694; *see also Van Vranken v. Atl. Richfield*

19  *Co.*, 901 F. Supp. 294, 300 (N.D. Cal. 1995) (approving $50,000 award).

20         Here, Plaintiff's counsel requests that the Court grant Plaintiff an incentive award of

21  $5,000.  The amount of the enhancement award is reasonable given the risks undertaken

22  by Plaintiff.  Taking the risk of filing a lawsuit against an employer deserves reward.

23  Additionally, Plaintiff was actively involved in the litigation and settlement negotiations of

24  this Action, including assisting Counsel to prepare for the mediation in this matter and

25  submitting to a full day of deposition.  Plaintiff worked diligently with counsel to prepare

26

27         [4] While Plaintiff's Counsel has frequently obtained fee awards in excess of the

28  presumptive benchmark, Plaintiff's Counsel will seek no more than 25% of the CSA.

1  the action and conferred with counsel regarding settlement negotiations.  (Dkt. No. 63:

2  Garcia Decl., ¶ 4-16, attached as Exhibit 3 to the Leviant Decl.)  And the requested

3  enhancement is just five times the average gross recovery of a class member. The

4  requested amount, based on a single digit multiplier, is reasonable.

5             **5.**        **The Costs of Administration Are Reasonable**

6          ILYM Group, Inc., an experienced third-party administrator, was appointed to

7  administer the notice and settlement distributions in this matter.  (Snow Decl., ¶¶ 2-3.)

8  Performing in all respects as required by the Agreement to date, the final cost of

9  administration, including future work, is $13,000.00. (Snow Decl.,¶ 12.)  Administration

10  of this Settlement for 536 Class Members occurred without any issues to date.  (Leviant

11  Decl., ¶ 33.)  ILYM will continue to perform services for the Settlement Class Members

12  when it completes the calculation and distribution of payments made under the Settlement.

13  Plaintiff therefor requests approval of a distribution to ILYM Group, Inc. of $13,000.00 as

14  its fee for third-party administration services.

15  **VII.**  **<u>CONCLUSION</u>**

16          Plaintiff negotiated a settlement that resolves claims and recovers money for

17  approximately 536 Settlement Class Members.  This settlement is fair and reasonable,

18  especially given the claims and the potential defenses to them and to class certification.

19  Plaintiff asks the Court to grant final approval of the settlement and adopt the proposed

20  order submitted herewith.

21                           Respectfully submitted,

22  Dated:  December 9, 2020       **MOON & YANG, APC**

23

24                          By: _____
                            Kane Moon

25                              H. Scott Leviant

26                          Attorneys for Plaintiff RITA GARCIA

27

28